# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Aspen Composers' Conference,

    Plaintiff,

v.

Library of Congress,
Cataloging in Publication Division,

    Defendants.

Case No. 12-cv-767 (JRT/SER)

**REPORT AND**
**RECOMMENDATION**

---

Natalie Synhaivsky, 5505 Brookview Avenue, Edina, Minnesota, 55424, for Plaintiff.

Bahram Samie, Esq., United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Defendants.

---

STEVEN E. RAU, United States Magistrate Judge

This case is before the Court on Defendant Library of Congress's (the "Library") Motion to Dismiss (Mot. to Dismiss) [Doc. No. 23] and Plaintiff Aspen Composers' Conference ("Aspen") Motion for Summary Judgment (Mot. for Summ. J.) [Doc. No. 29]. This matter has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons set forth below, it is recommended that the Library's Motion be granted and Aspen's Motion be denied.

## I. BACKGROUND

This case concerns the Library's Cataloging in Publication Program (the "CIP Program"), which allows for quick and efficient cataloging of books prior to publication. (Decl. of Beacher Wiggins, "Wiggins Decl.") [Doc. No. 42 ¶ 2]. Aspen alleges the Library improperly excluded several of its publications from the CIP Program, in violation of its First Amendment rights.

(Compl.) [Doc. No. 1 ¶ 4]. Aspen also alleges that the Library's decision to exclude its publications from the CIP Program deprived it of potential profits, in violation of the Commerce Clause. (*Id.*).

Aspen moved for summary judgment, seeking the following equitable and monetary relief: CIP Program inclusion for four of its published texts, as well as for a pending application and "all future publications of proceedings" from Aspen's conference; compensation for anticipated profits from the lost sales of two of its texts; and the $350.00 filing fee associated with this action. (Mot. for Summ. J.); (Compl. at 4–5). The Library filed a Motion to Dismiss, arguing this Court lacks jurisdiction over Aspen's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) because sovereign immunity applied and further, Aspen's requested relief regarding future publications was not ripe. (Mem. in Supp. of Mot. to Dismiss) [Doc. No. 25 at 1]. Alternatively, the Library sought dismissal of the case under Rule 12(b)(6) because Aspen failed to state a claim upon which relief could be granted. (*Id.*).

### A. The CIP Program

The CIP Program creates a bibliographic record of certain eligible publications. Cataloging in Publication data ("CIP Data") is distributed weekly to subscribers, including "large libraries, bibliographic utilities, book vendors, and similar organizations worldwide." (Wiggins Decl. ¶ 2). CIP Data includes the title of the work, list of contributing authors, titles of chapters, and key words. (Compl. at 7). Publishers wishing to participate in the CIP Program submit applications and the full text of publications via the Library's website. (Wiggins Decl. ¶ 2).

Eligibility for the CIP Program requires the publisher and the publication to satisfy a number of criteria. (Wiggins Decl. ¶ 2). An eligible publisher must be American and have previously published a minimum of three titles by three authors, and all of the titles must have been widely acquired by American libraries. (*Id.* ¶ 5).

The CIP Program does not accept every work submitted by an eligible publisher, however. (*Id.*). A text must be "likely to be widely acquired by [American] libraries." (*Id.*). Additionally, "[c]ertain categories of materials are . . . ineligible for the CIP Program, including textbooks below the college level (not including United States history texts), repackaged editions, translations, vest pocket editions, computer files, mass market paperbacks, music scores, serials, self-published books, and travel guides." (*Id.*). Conference proceedings may be cataloged as either monographs or serials. (Decl. of Thompson Yee) [Doc. No. 41 ¶ 2]. Conference materials catalogued as monographs "are not ongoing or may be issued as a part of a monographic series." (*Id.*). They "may also have a unique title that changes from proceeding to proceeding," but "discretion is given to the cataloguer to use his or her judgment to determine whether a thematic or slogan-like phrase constitutes a unique title." (*Id.*). Accordingly, some conference materials are accepted into the CIP Program. (*Id.*).

"The policies and procedures that govern the CIP Program are developed in consultation with the library community." (Wiggins Decl. ¶ 7). The constraints on the CIP Program are necessary because "[t]he resources available to support the CIP Program are limited." (*Id.* ¶ 4). Furthermore, publications not encompassed within the CIP Program (like serial texts) may be eligible for inclusion in an alternative program, the Preassigned Control Number Program (the "PCN Program"). (*Id.* ¶ 8). The PCN Program assigns a Library of Congress Control Number to works the Library of Congress is most likely to acquire. (*Id.*). An additional option for serial

3

works is the International Standard Serial Number, which the Library of Congress does not govern. (*Id.*).

B.     **Aspen's Attempts to Participate in the CIP Program**

Aspen is a "forum for composers to meet with one another, and to interact on a professional level." (Compl. ¶ 7). It hosts an annual conference where authors present papers on musical topics, which Aspen later publishes in a single volume as time and funding permit. (*Id.* ¶¶ 7, 8). Since 2002, Aspen has published proceedings from six conferences: (1) *The Proceedings of the 2001 Aspen Composers' Conference*; (2) *The Proceedings of the 2002 Aspen Composers' Conference*; (3) *The Proceedings of the 2003 Aspen Composers' Conference*; (4) *Music and Politics*; (5) *Music and Time*; and (6) *Music and Words*. (*Id.* ¶¶ 8, 15). Aspen filed a CIP Program application for each of these works and, at the time the Complaint was filed, a CIP Program application was pending before the Library for a seventh publication, *Music and Culture*. (*Id.* at 4–5).

After reviewing Aspen's applications, the Library initially assigned CIP Data to *The Proceedings of the 2001 Aspen Composers' Conference*; *Music and Politics*; *Music and Time*; and *Music and Words*.[1] (*Id.* ¶¶ 8, 12). Subsequently, the Library determined *The Proceedings of the 2001 Aspen Composers' Conference*; *Music and Time*; and *Music and Words* were serial publications and revoked their CIP Data. (*Id.* ¶ 12). The Library also assigned serial designation to *The Proceedings of the 2002 Aspen Composers' Conference* and *The Proceedings of the 2003 Aspen Composers' Conference*, thereby denying their eligibility for the CIP Program. (*Id.* ¶¶

---

[1]     The pleadings and briefing are unclear regarding the status of *The Proceedings of the 2001 Aspen Composers' Conference*. Based on the Complaint, it appears that publication received CIP Data, but the Library later revoked it. (Compl. at 4).

11–12). *Music and Politics* is the only publication with CIP Data currently.[2] (*Id.* ¶ 13). The rest of Aspen's publications are registered with their respective International Standard Book Numbers. (*Id.* ¶ 12).

## II. Standard of Review

### A. The Library's Motion to Dismiss

The Library moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). As to the Rule 12(b)(1) basis, the Library claims this Court lacks subject matter jurisdiction because sovereign immunity applies. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction and requires the Court to examine whether it has authority to decide the claims. *Uland v. City of Winsted*, 570 F. Supp. 2d 1114, 1117 (D. Minn. 2008) (JNE/JJG). "In deciding a Rule 12(b)(1) motion, the Court is 'free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Wold v. United Sates*, No. 11-cv-1616 (JRT/LIB), 2013 WL 1953313, at *2 (D. Minn. May 10, 2013) (quoting *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990)). "If the court finds that jurisdiction is not present, it must dismiss the matter." *Id.* (citing Fed. R. Civ. P. 12(h)(3); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583–84 (1999)).

The Library's Rule 12(b)(6) basis rests on the contention that Aspen failed to allege sufficient facts to support its First Amendment and Commerce Clause claims. On a Rule 12(b)(6) motion, courts consider all facts alleged in the complaint as true, and construe the pleadings in the light most favorable to the nonmoving party. *See, e.g.*, *Carton v. Gen. Motors Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010) (citations omitted). A court must not,

---

[2] The status of Aspen's application for *Music and Culture* is unclear from the record before the Court.

however, give effect to conclusory allegations of law. *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007) (citation omitted). Although a complaint need not contain "detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). The complaint must plead facts that render a defendant's liability plausible—not merely possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Aspen's Motion for Summary Judgment

Federal Rule of Civil Procedure 56 provides that summary judgment shall issue if the pleadings, depositions, interrogatory answers, admissions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883–84 (1990) (quoting Fed. R. Civ. P. 56(c)). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. *Ludwig v. Anderson*, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (citation and quotation omitted).

## III. DISCUSSION

### A. Sovereign Immunity

The Library argues that sovereign immunity bars Aspen's claims to the extent seeks it monetary damages. To sue the United States, a plaintiff must establish subject matter jurisdiction by demonstrating a waiver of sovereign immunity. *VS Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). The burden of pleading and establishing jurisdiction must be appear on the face of the complaint in a short and plain statement. *Kuzner v. Magill*, 667 F. Supp. 2d 1058, 1060 (D. Minn. 2009) (DSD/FLN) (citing Fed. R. Civ. P. 8(a)(1)). Absent a waiver, sovereign immunity shields the federal government and its agencies from a suit for damages based on an alleged constitutional violation. *Great Rivers Habitat Alliance v. Fed. Emergency Mgmt. Agency*, 615 F.3d 985, 988–89 (8th Cir. 2010) (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). Such a waiver "must be expressed unequivocally and cannot be implied." *Manypenny v. United States*, 948 F.2d 1057, 1063 (8th Cir. 1991) (citations omitted).

In its opposition memorandum, Aspen claimed sovereign immunity was waived pursuant to 28 U.S.C. § 1346(a)(2). (Mem. in Response to Def.'s Mot. to Dismiss) [Doc. No. 36 at 4]. Section 1346(a)(2) waives sovereign immunity where a plaintiff seeks less than $10,000 in damages for a constitutional violation. 28 U.S.C. § 1346(a)(2). The Library argues that because Aspen failed to cite 28 U.S.C. § 1346(a)(2) in the Complaint, this Court lacks subject matter jurisdiction.

The Court acknowledges pleading deficiencies as to the waiver sovereign immunity, including a failure to cite any statutory authority providing an unequivocal waiver by the United States. Nevertheless, in the interests of justice and judicial efficiency, the recommendation

herein rests on a more fundamental problem: the causes of action stated in the Complaint do not entitle Aspen to relief.[3]

### B. Ripeness

Aspen's requested participation in the CIP Program for "all future publications" must be dismissed because it is based on claims that are not ripe. (Compl. at 5).[4] The ripeness doctrine reflects the determination that courts should decide "only a real, substantial controversy, not a mere hypothetical question." *C.H. Robinson Worldwide, Inc. v. Lobrano*, No. 10-cv-4966 (DSD/TNL), 2011 WL 2912700, at *4 (D. Minn. July 19, 2011) (citing 13B Charles Alan Wright et al., *Federal Practice & Procedure* § 3532.2 (3d ed.) (citation and internal quotation marks omitted)). There is no precise test to determine ripeness. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 297 (1979). "The basic inquiry is whether the conflicting contentions of the parties present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *Id.* at 298. "[O]ne does not have to await the consummation of threatened injury" for a claim to be ripe. *Id.* (citation omitted). "If the injury is certainly impending, that is enough." *Id.* (citation omitted).

Aspen seeks order from the court granting CIP Data for "all future publications of proceedings as specified by title and topic of the Aspen Composers' Conference." (Compl. at 5).

---

[3] The Court notes, however, that a § 1346 waiver likely applies in this matter. The Library is an agency of the federal government and suit against it is essentially a suit against the United States. Apart from the equitable relief sought, Aspen seeks only $2,583.04 in lost revenue and reimbursement of the $350.00 filing fee. (Compl. at 5). Therefore, to the extent Aspen seeks monetary damages less than $10,000, § 1346 waives sovereign immunity. Given the likelihood of the application of this waiver and the ease with which Aspen could seek to amend its Complaint to clarify any deficiencies regarding jurisdiction, the Court considers Aspen's substantive claims.

[4] The Complaint is ten pages long. The first four pages are labeled appropriately. For purposes of this Report and Recommendation, subsequent pages are referenced according to the pagination assigned by the CM/ECF system, despite labeling to the contrary.

But, conference proceedings may well never be published again. Even if they are published, Aspen may not file an application for the CIP Program. These decisions will be made solely at Aspen's discretion. This request for relief fails to satisfy the ripeness requirement for Article III standing because it rests "upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Denny Hecker Cadillac-Pontiac-GMC, Inc. v. GMAC, Inc.*, No. 10-cv-0068 (JRT/RLE), 2010 WL 3399163, at *6 n.6 (D. Minn. Aug. 26, 2010) (citation and quotation omitted). To the extent Aspen seeks determinations of rights relative to participation in the CIP Program in the future, the Court recommends dismissal of the Complaint.

### C. First Amendment Claim

In broad terms, "[t]he First Amendment . . . protects the right to be free from government abridgment of speech." *Ysursa v. Pocatello Educ. Ass'n,* 555 U.S. 353, 358 (2009). The word "speech" in the First Amendment "is not construed literally, or even limited to the use of words." *Occupy Minneapolis v. Cnty. of Hennepin*, 866 F. Supp. 2d 1062, 1068 (D. Minn. 2011) (RHK/TNL) (citations omitted). "In addition to protecting literal speech, the First Amendment protects some expressive conduct, as long as it is sufficiently imbued with elements of communication." *Id.* (internal citations and quotations omitted).

The issue presented is whether the Library's denial of Aspen's inclusion in the CIP Program violates Aspen's First Amendment rights. Resolving this question first requires the Court to decide whether participation in the CIP Program is protected by the First Amendment. *Gay-Lesbian-Bisexual-Transgender Pride/Twin Cities v. Minneapolis Park & Recreation Bd.*, 721 F. Supp. 2d 866, 873 (D. Minn. 2010) (JRT/JJG) (quoting *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985)). If not, the analysis ends. *Id.* Assuming CIP Program participation is protected, the Court must next identify the nature of the forum,

9

because the extent to which the Government may limit access depends on the type of forum. *Id.* Finally, the Court must assess whether the Library's justifications for excluding Aspen's publications from the CIP Program satisfy the applicable standard. *Id.* Under this analysis, the Court concludes that participation in the CIP Program is not sufficiently imbued with elements of communication to be protected "speech" under the First Amendment.[5] Thus, the analysis ends at the first step.

The only other court to consider the CIP Program under the First Amendment framework is the Court of Federal Claims. That court specifically concluded that "[t]he CIP [P]rogram was not created for the purpose of creating a forum for speech, but rather for the efficient cataloging of books most likely to be acquired by libraries." *Overview Books, LLC v. United States*, 72 Fed. Cl. 37, 45 (2006). The Complaint here echoes that sentiment, describing the CIP Program's purpose as purely a cataloging system.[6] (Compl. ¶ 10). Though Aspen may perceive a potential benefit because of the ability to reach an expanded audience through participation in the CIP

---

[5] In reaching this conclusion, the Court expresses no opinion about the CIP Program's forum status for purposes of the First Amendment.

[6] The Library's Director for Acquisitions & Bibliographic Access, Beacher Wiggins ("Wiggins"), explicitly acknowledged the purpose of the CIP Program in his affidavit filed in opposition to Aspen's Motion. *See* (Wiggins Decl. ¶ 2). In describing the purpose of the CIP Program as a "quick and efficient cataloging" system that serves "the nation's libraries," Wiggins explained that

> [t]he purpose of the CIP Program is not, nor has it ever been, to provide private publishers, authors, and other entities with a tool for marketing their publications. Should private entities choose to take and use this information in the course their dealings in the competitive market to promote their works, this occurs independently of the CIP Program and the Library has no involvement.

(Wiggins Decl. ¶ 3). Although referred to here, the Court does not rely on Wiggins's affidavit or use it as a basis for its decision on the Library's Motion because this proposition is adequately supported in the Complaint. *See BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 688 (8th Cir. 2003); *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999).

Program, that perception does not mean its ineligibility is a violation of their First Amendment rights.

The Library does not need to make the CIP Program available to anyone seeking to advance a message; the First Amendment does not guarantee access to property for speech activities simply because it is government-owned. *See Cornelius*, 473 U.S. at 803; *City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 814 (1984); *see also Wells v. City & Cnty. of Denver*, 257 F.3d 1132, 1149 (10th Cir. 2001) ("The First Amendment . . . does not require the government to . . . enhance the strength of the speaker's message in the marketplace of ideas."). "[T]he mere fact that government property *can* be used as a vehicle for communication does not mean that the Constitution *requires* such uses to be permitted." *City Council of L.A.*, 466 U.S. at 814 (emphases added). In any event, Aspen's participation in the CIP Program is not indispensable to disseminating its message and nothing in the record indicates it cannot effectively express themselves without CIP Data. *See Occupy Minnesota*, 866 F. Supp. 2d at 1068. Accordingly, participation in the CIP Program is not protected by the First Amendment; Aspen may not challenge the Library's eligibility determination for participation in the CIP Program on free-speech grounds.[7]

---

[7] Aspen's argument that the Library applies its policies inconsistently because some conference materials receive CIP Data is unpersuasive. "[T]he First Amendment does not mandate perfect consistency" in the application of a regulation. *Clear Channel Outdoor, Inc. v. City of N.Y.*, 608 F. Supp. 2d 477, 499 (S.D.N.Y. 2009) (citations omitted). Regardless, even if Aspen was correct that the Library has inconsistently applied certain policies, the Court does not believe, on the current record, that Aspen has made a significant showing that such inconsistent applications rise to the level of a constitutional violation

D.   Commerce Clause Claim

Aspen argues that the application of the Library's eligibility policies for the CIP Program, as applied to it, violate the Commerce Clause.[8]  The Library argues Aspen has not satisfied the pleading requirements, asserting only broad, legal conclusions.  The Court finds that the Complaint only vaguely alleges any facts related to Aspen's Commerce Clause challenge and fails to state a claim on which relief can be granted.

The Commerce Clause provides Congress with the power "[t]o regulate Commerce with foreign Nations, and among the several states, and with the Indian Tribes."  U.S. Const. art. I, § 8, cl. 3.  Pursuant to its Commerce Clause power Congress may regulate three categories of activity as described in *United States v. Lopez*: (1) "the channels of interstate commerce," (2) "persons or things in interstate commerce," and (3) "those activities that substantially affect interstate commerce."   514 U.S. 549, 558 (1995).  Although the Commerce Clause is an affirmative grant of regulatory powers to Congress, the Supreme Court also interprets the clause as having a negative aspect, referred to as the dormant commerce clause.  *See Edgar v. MITE Corp.*, 457 U.S. 624, 640 (1982).  The dormant commerce clause is a limitation on the power of the states to unjustifiably discriminate against or burden the flow of items in commerce.  *See id.*

The Complaint cites the Commerce Clause as a source of jurisdiction.  (Compl. ¶ 4). Later, Aspen claims that its exclusion from the CIP Program "barred [its] publications from electronic data bases used by libraries and library services around the world to locate publications which they deem would contribute to the materials of their respective institutions" and prevented it "from generating income from its publications, which would be used in turn to

---

[8]   Aspen's counsel confirmed Aspen's claim was an "as applied" challenge at the hearing.

further the purpose of [Aspen]."[9] (*Id.* ¶ 15). These contentions are insufficient to state a claim based on the Commerce Clause.

Aspen has not alleged that the Library's exclusion of its publications in the CIP Program exceeded congressional authority. Nor has it alleged any state action in contravention of the state's authority as limited by the Commerce Clause. As a result, the Complaint is insufficient for a Commerce Clause claim and this Court recommends dismissal. *See Lopez*, 514 U.S. at 601 n.9 (noting that the court's "proper role in reviewing federal legislation [is] to determine if it exceeds congressional authority"). Moreover, in this Court's estimation, a Commerce Clause claim is simply an inappropriate vehicle for review of the Library's determinations.[10]

---

[9] The Court notes that Aspen could also have intended this argument to be associated with its First Amendment challenges. Given the lack of clarity from Aspen, however, the Court is uncertain as to how Aspen categorizes this claim. To the extent this Aspen cites the inability to generate income to support its message as the basis for a First Amendment challenge, it is dismissed for the reasons stated above.

[10] A more appropriate vehicle may be a claim under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701(b)(1)(A). Aspen has not stated a claim under the APA; even if it had, however, the claim would be dismissed. During the hearing on this matter, the Court requested supplemental briefing from the parties regarding the applicability of the APA to this action. (Text Only Entry dated May 22, 2013) [Doc. No. 48]; (Am. Text Only Entry dated May 22, 2013) [Doc. No. 49]. The Parties' submitted supplemental briefs on June 4, 2013. (Br. Regarding the Status of the Library of Congress as Either a Legislative Branch or Executive Branch Department) [Doc. No. 50]; (Supplemental Br. in Supp. of Mot. to Dismiss) [Doc. No. 51].

The APA provides judicial review for a person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action." 5 U.S.C. § 702. For purposes of the APA, an "agency" is "each authority of the Government of the United States, whether or not it is within or subject to review by another agency." 5 U.S.C. § 701(b)(1) (2013). It does not, however, include Congress. *Id.* § 701(b)(1)(A). Courts interpret the explicit exclusion of Congress from the meaning of agency under the APA as encompassing all of the legislative branch. *Ethnic Emps. of the Library of Congress v. Boorstin*, 751 F.2d 1405, 1416 n.15 (D.C. Cir. 1985). According to this Court's research, all other courts considering the issue have found the Library is not an agency subject to the APA. *See Washington Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1449 (D.C. Cir. 1994) (citing *Ethnic Employees of the Library of Congress*, 751 F.2d at 1416 n.15, as exempting the Library from the APA); *Benedict v. Library of Congress*, 1997 U.S. Dist. LEXIS 16158, at *7 (D.D.C. Oct. 8, 1997) ("The APA is strictly construed, and 'is not to be interpreted as an implied grant of subject-matter jurisdiction

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Library of Congress's (the "Library") Motion to Dismiss (Mot. to Dismiss) [Doc. No. 23] is **GRANTED**;

2. Plaintiff Aspen Composers' Conference Motion for Summary Judgment (Mot. for Summ. J.) [Doc. No. 29] is **DENIED**.

Dated: June 17, 2013

                                          *s/ Steven E. Rau*
                                          STEVEN E. RAU
                                          United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **July 1, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.

---

to review agency actions.' . . . [The] Library of Congress[] is not an agency for purposes of APA review." (citation omitted)); *Keeffe v. Library of Congress*, 777 F.2d 1573, 1574 (D.C. Cir. 1985) (holding that "the Library of Congress[] is a congressional agency"); *Ethnic Employees of the Library of Congress*, 751 F.2d at 1416 n.15 (citing *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 145 (1980)) (affirming summary judgment in favor of the Library of Congress, citing the Supreme Court's *Kissinger* decision which explained that the Library of Congress is not an agency under the Freedom of Information Act and because the definition of "agency" in the Freedom of Information Act, 5 U.S.C. § 552(e), incorporates the definition of an agency under the APA, 5 U.S.C. § 551(1), it follows that the Library is not an agency under the APA); *see also* 2 U.S.C. §§ 131–35, 171; *Judd v. Billington*, 863 F.2d 103, 105 (D.C. Cir. 1988) (precluding a former Library employee from bringing a Rehabilitation Act, 29 U.S.C. § 701 (2008), claim because the Library is "part of the legislative branch" and the Rehabilitation Act applies only to employees of the Executive Branch). Accordingly, the APA bars judicial review of the Library's decision with respect to Aspen's publications.